UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | Case No. 11-02833 |
|---|---|
| DANIEL ROY MONTIHO and RACHELLE MAY MONTIHO, | Chapter 13 |
| Debtors. | Re: Docket No. 2 |

**MEMORANDUM OF DECISION**
**ON CHAPTER 13 PLAN CONFIRMATION**

This case presents the question of whether a chapter 13 debtor's payments to unsecured creditors must increase when the debtors make their last payment on a secured auto loan. I conclude that the answer is yes, and therefore I will deny confirmation of the plan.

Mr. and Mrs. Montiho's plan (dkt. no. 2) provides that they will continue to make their regular contractual payments of about $640 per month to Hawaii USA Federal Credit Union ("HIUSA") on two auto loans. The last payment on the loans is due in April 2012. They will also pay $346 per month for 60 months to the trustee for distribution to holders of unsecured claims.

In addition to the claims based on the two auto loans, HIUSA also holds claims for about $70,000 based on a second mortgage and about $5,800 of credit card debt. The debtor asserts, and HIUSA apparently agrees, that the second

mortgage claim is wholly unsecured because the value of the collateral is less than the first mortgage debt. Therefore, both of these claims are unsecured.

HIUSA objects to confirmation of the plan, arguing that the plan does not devote all of the debtor's "projected disposable income" to the payment of unsecured creditors as section 1325(b)(1) requires. HIUSA contends that, in order to meet this standard, the plan payments must increase when the car loans are paid off.

Courts have wrestled with the phrase "projected disposable income" ever since Congress amended the Bankruptcy Code in 2005. The Supreme Court has interpreted the phrase in a pair of cases, both of which are relevant to the Montiho's plan.

In Hamilton v. Lanning, 130 S.Ct. 2464, 2478 (2010), the Court held that, in calculating projected disposable income, "the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation."

In Ransom v. FIA Card Services, N.A., 131 S.Ct. 716 (2011), the Court held that a debtor who owns his car outright, and who therefore does not make any loan or lease payments on the car, cannot deduct the IRS standard vehicle ownership expense when calculating his projected disposable income.

HIUSA correctly points out that the elimination of the auto loan payments, and the corresponding increase in the debtors' ability to pay unsecured creditors, is known and virtually certain to occur. Further, the debtors will own the cars outright once their car payments end.

Since <u>Lanning</u> and <u>Ransom</u>, most courts have held that the plan payments must "step up" when the debtors' payments on a secured loan cease, because that event is "known or virtually certain at the time of confirmation." <u>See</u>, <u>e.g.</u>, <u>In re Darrohn</u>, 615 F.3d 470 (6th Cir. 2010) (denying an allowance for payments on a debt secured by property which the debtors intended to surrender); <u>In re McCullers</u>, 451 B.R. 498 (Bankr. N.D. Cal. 2011) (holding that plan payments must step up on final payment of a 401(k) loan); <u>In re Wing</u>, 435 B.R. 705, 714 (Bankr. D. Colo. 2010) (holding that debtor may not deduct payments on a second mortgage that the debtor intended to strip off).[1]

Mr. and Mrs. Montiho respond in several ways.

First, they argue that, according to <u>Lanning</u>, adjustments to projected disposable income for future events should occur "only in unusual cases." <u>Lanning</u>, 130 S.Ct. at 2475. They point out that the typical auto loan has a five

---

[1] Cases that were decided before <u>Lanning</u> and <u>Ransom</u> and are inconsistent with the Supreme Court's decisions are no longer authoritative.

year maturity and most chapter 13 plans have a five year term. The debtors therefore argue that many chapter 13 cases would involve auto loans maturing during the plan term, and that requiring an adjustment to plan payments would not be unusual. The Supreme Court did not say exactly what it would consider "unusual;" more importantly, the logic of the decision does not turn on how frequently it would apply.

Mr. and Mrs. Montiho also argue that administrative efficiency suggests that their plan should be confirmed as filed, leaving the trustee or a creditor to file a motion to modify the plan after the auto loan payments end. This argument might have more force if the auto loans matured in (say) four years; plan modification might be more appropriate in that sort of case, to take account of other changes in income and expenses that might have occurred in the meantime. In this case, however, the auto loans will mature in only three months. The simplest solution in this case is to require a plan that accounts for events that will surely happen, just as Lanning suggests.

Mr. and Mrs. Montiho also cite cases where the debtor had actual expenses in a particular category, but the actual expenses are less than the relevant allowance. In such circumstances, some courts have decided that the debtors can deduct the full amount of the allowance. See, e.g., In re Scott 457 B.R. 740

4

(Bankr. S.D. Ill. 2011); In re O'Neill Miranda, 449 B.R. 182 (Bankr. D. P.R. 2011); In re Owsley, 384 B.R. 739 (Bankr. N.D. Tex. 2008); Musselman v. eCast Settlement Corp., 394 B.R. 801 (E.D. N.C. 2008). Other courts have held that the allowances are caps, not fixed allowances, and that debtors can deduct the lesser of the allowance or their actual expense. See, e.g., In re Rezentes, 368 B.R. 55 (Bankr. D. Haw. 2007). The Supreme Court has declined to weigh in on this issue. Ransom, 131 S.Ct. at 728 n. 8. This question has no relevance to this case, however, because it is clear that the debtor will have no car payments after April 2012 and Ransom holds that, when the debtor's car payment is zero, the debtor is not entitled to any allowance for automobile ownership expense.

The debtors argue that requiring stepped up plan payments upon payoff of a car loan makes it more difficult to complete form B22, the form which is intended to capture the "means test" calculation. The difficulties do not seem serious to me. In any event, HIUSA correctly points out that forms promulgated by the judiciary cannot alter the meaning of statutes passed by the legislature.

In its supplemental post-hearing memorandum, HIUSA argues that, because Mr. Montilho has obtained a new job at a higher wage, the debtors' projected disposable income is even higher. Because the debtors have not had an opportunity to respond to this argument, I will not address it here.

5

U.S. Bankruptcy Court - Hawaii   #11-02833   Dkt # 32   Filed 02/10/12   Page 5 of 6

The trustee is directed to submit an order in the usual form providing for the denial of plan confirmation.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **02/10/2012**

6

U.S. Bankruptcy Court - Hawaii   #11-02833   Dkt # 32   Filed  02/10/12   Page 6 of 6